UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CR. NO. 4:23-CR-159 |
| v. | (Chief Judge Brann) |
| CEDRIC LODGE, KATRINA MACLEAN, JOSHUA TAYLOR and DENISE LODGE, Defendants. | |

# INDICTMENT

THE GRAND JURY CHARGES:

FILED
SCRANTON

JUN 13 2023

PER ___JKC___
DEPUTY CLERK

**COUNT 1**
18 U.S.C. § 371
(Conspiracy)

## I. Background

At times material to the Indictment:

### A. Relevant Individuals and Entities

1. Harvard Medical School ("HMS"), located in Boston Massachusetts, was the graduate medical school of Harvard University, a private, non-profit educational institution.

2. CEDRIC LODGE resided in Goffstown, New Hampshire, and was employed by Harvard Medical School as the Morgue Manager.

3. DENISE LODGE was married to CEDRIC LODGE and resided in Goffstown, New Hampshire.

4. KATRINA MACLEAN resided in Salem, Massachusetts.

5. Kat's Creepy Creations was a studio and store located in Peabody, Massachusetts, and owned and operated by KATRINA MACLEAN.

6. JOSHUA TAYLOR resided in West Lawn, Pennsylvania.

7. Jeremy Pauley resided in Enola, Pennsylvania, and Bloomsburg, Pennsylvania, both within the Middle District of Pennsylvania.

**B. Harvard Medical School Morgue Operations**

8. HMS utilizes human cadavers in the regular course of teaching its students.

9. Cadavers are voluntarily donated by individuals who complete an agreement with HMS through the Anatomical Gifts Program.

10. When HMS is finished using the donated cadavers, the donor's remains are typically cremated at a crematorium in Roslindale,

Massachusetts, and are either returned to the donor's family or laid to rest in a cemetery in Tewksbury, Massachusetts, maintained for that purpose.

11.  Donors may have elected to specify the final disposition of their remains as part of their donation agreement. If a donor specified that their remains should be returned to their next of kin after cremation, HMS turned over the donor's cremains to the specified family member.

12.  Harvard Medical School maintained an onsite morgue facility where donated cadavers were stored until they were used for education, teaching, or research purposes, and again when the school was finished with the cadaver to await final disposition.

13.  Harvard Medical School documented the identities of donated cadavers and maintained a database and records associated with each cadaver. HMS assigned each donated body an identification number and identification tags were affixed to the body and the bag in which it was stored. In preparation for final disposition, Harvard Medical School employees, including the Morgue Manager, confirmed

the identity of each cadaver prior to cremation by viewing any identifying marks, if still visible, and assigned identification number.

14.  Employees of Harvard Medical School are not permitted to remove, keep, or sell any human remains, in whole or in part, belonging to a donated cadaver.

## II.  The Conspiracy and its Objects

15.  From in or about 2018, the exact date being unknown to the Grand Jury, and continuing thereafter until on or about March 7, 2023, in the Middle District of Pennsylvania, and elsewhere, the defendants,

**CEDRIC LODGE,
KATRINA MACLEAN,
JOSHUA TAYLOR, and
DENISE LODGE,**

knowingly, intentionally, and willfully conspired, combined, confederated, and agreed with Jeremy Pauley and other persons both known and unknown to the Grand Jury, to unlawfully transport, transmit, and transfer, and cause to be transported, transmitted, and transferred in interstate commerce from Boston, Massachusetts to New Hampshire and Pennsylvania, stolen goods, wares and merchandise, that is, human remains, of the value of $5,000 or more, knowing the

4

same to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

16. The object of the conspiracy was for the conspirators to profit from the interstate shipment, purchase, and sale of stolen human remains.

## III. Manner and Means

The object of the conspiracy was accomplished, in part, by the following manner and means:

17. CEDRIC LODGE was employed as Morgue Manager at Harvard Medical School and, as such, had access to the morgue and the donated cadavers stored in the morgue.

18. At times, CEDRIC LODGE stole dissected portions of donated cadavers, including, for example, heads, brains, skin, bones, and other human remains, without the knowledge or permission of HMS, and removed those remains from the morgue in Massachusetts and transported them to his residence in New Hampshire.

19. CEDRIC LODGE and DENISE LODGE communicated with others, including KATRINA MACLEAN and JOSHUA TAYLOR,

5

through internet social media websites and cellular telephones regarding the sale of stolen human remains.

20. CEDRIC LODGE and DENISE LODGE sold stolen human remains to KATRINA MACLEAN, JOSHUA TAYLOR, and others, and sometimes shipped those remains through the United States Postal Service to Pennsylvania and elsewhere.

21. At times, CEDRIC LODGE used his access to the morgue to allow KATRINA MACLEAN, JOSHUA TAYLOR, and others to enter the morgue and choose what remains to purchase, after which, CEDRIC LODGE, KATRINA MACLEAN, or JOSHUA TAYLOR would remove the stolen remains and transport them elsewhere.

22. KATRINA MACLEAN sold human remains stolen in this manner to buyers in multiple states, including Jeremy Pauley, in the Middle District of Pennsylvania, and shipped or transported the stolen human remains to those buyers. MACLEAN also stored and sold stolen remains at Kat's Creepy Creations.

23. JOSHUA TAYLOR bought and caused stolen human remains to be shipped to him in Pennsylvania from New Hampshire,

transported stolen human remains from Massachusetts to Pennsylvania, and sold and shipped stolen human remains to buyers, including Jeremy Pauley, in the Middle District of Pennsylvania.

## IV. Overt Acts

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Middle District of Pennsylvania and elsewhere:

24. On multiple occasions in 2018 and 2019, including on or about April 15, 2019, DENISE LODGE communicated with Individual 1, who resided in Montgomery, Pennsylvania, in the Middle District of Pennsylvania, and agreed to sell him human remains stolen from Harvard Medical School by CEDRIC LODGE. DENISE LODGE shipped the stolen human remains from Manchester, New Hampshire, to Montgomery, Pennsylvania, in a package bearing tracking number ending 3423 03.

25. In or about October 2020, KATRINA MACLEAN agreed to purchase two dissected faces for $600 from CEDRIC LODGE, and they

7

agreed to meet at 1:00 p.m. on or about October 28, 2020, at the Harvard Medical School morgue to conduct the transaction.

26. In or about June and July 2021, KATRINA MACLEAN, in Massachusetts, shipped human skin to Jeremy Pauley, in Pennsylvania, and engaged his services to tan the skin to create leather. On or about July 31, 2021, Pauley sent a photograph of the leather and Maclean agreed to provide Pauley with human skin in lieu of monetary payment. KATRINA MACLEAN then contacted CEDRIC LODGE and inquired about obtaining human skin to send to "the dude I sent the chest piece to tan." CEDRIC LODGE agreed to look for skin at HMS for Maclean to send to Pauley.

27. On or about August 15, 2021, Jeremy Pauley shipped the tanned human skin from the Middle District of Pennsylvania to KATRINA MACLEAN, in Massachusetts.

28. On or about September 20, 2021, Maclean shipped human skin from Massachusetts to Jeremy Pauley in the Middle District of Pennsylvania, in payment for his services. A few days later, Maclean

8

contacted Pauley to confirm the shipment arrived because she "wanted to make sure it got to you and I don't expect agents at my door."

29. Between on or about September 3, 2018, through July 12, 2021, JOSHUA TAYLOR transferred 39 electronic payments to PayPal account Twiam@yahoo.com, operated by DENISE LODGE, totaling $37,355.56, in payment for human remains stolen by CEDRIC LODGE from Harvard Medical School. For example, on May 19, 2019, Taylor sent DENISE LODGE $1,000 with a memo that read, "head number 7." On November 20, 2020, Taylor sent DENISE LODGE $200 with a memo that read, "braiiiiiins."

30. On or about October 19, 2021, Jeremy Pauley transferred $8,800 in United States currency to KATRINA MACLEAN via PayPal in payment for stolen human remains.

31. Jeremy Pauley transferred 25 payments totaling $40,049.04 in United States currency to JOSHUA TAYLOR via PayPal, including $3,500 on April 1, 2021, $8,250 on October 7, 2021, and $9,000 on January 13, 2022.

All in violation of Title 18, United States Code, Section 371.

THE GRAND JURY FURTHER CHARGES:

## COUNT 2
18 U.S.C. §§ 2314, 2
(Interstate Transport of Stolen Goods, Aid and Abet)

From in or about 2018 through on or about August 16, 2022, within the Middle District of Pennsylvania and elsewhere, the defendant,

**CEDRIC LODGE,**

did unlawfully transport, transmit, and transfer in interstate commerce, and did aid, abet, induce, and procure the transportation, transmission, and transfer of, stolen goods, wares, and merchandise, that is, human remains, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud.

In violation of Title 18, United States Code, Sections 2314 and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 3
18 U.S.C. §§ 2314, 2
(Interstate Transport of Stolen Goods, Aid and Abet)

From on or about July 22, 2021, through on or about October 19, 2021, within the Middle District of Pennsylvania and elsewhere, the defendant,

**KATRINA MACLEAN,**

did unlawfully transport, transmit, and transfer in interstate commerce, and did aid, abet, induce, and procure the transportation, transmission, and transfer of, stolen goods, wares, and merchandise, that is, human remains, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud.

In violation of Title 18, United States Code, Sections 2314 and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 4
18 U.S.C. §§ 2314, 2
(Interstate Transport of Stolen Goods, Aid and Abet)

From in or about September 2018 through in or about July 2021, within the Middle District of Pennsylvania and elsewhere, the defendant,

**JOSHUA TAYLOR,**

did unlawfully transport, transmit, and transfer in interstate commerce, and did aid, abet, induce, and procure the transportation, transmission, and transfer of, stolen goods, wares, and merchandise, that is, human remains, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud.

In violation of Title 18, United States Code, Sections 2314 and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 5
18 U.S.C. §§ 2314, 2
(Interstate Transport of Stolen Goods, Aid and Abet)

From in or about 2018 through on or about March 13, 2020, within the Middle District of Pennsylvania and elsewhere, the defendant,

**DENISE LODGE,**

did unlawfully transport, transmit, and transfer in interstate commerce, and did aid, abet, induce, and procure the transportation, transmission, and transfer of, stolen goods, wares, and merchandise, that is, human remains, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud

In violation of Title 18, United States Code, Sections 2314 and 2.

## FORFEITURE ALLEGATION

The allegations contained in Counts 1 through 5 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461.

Upon conviction of the offenses in violation of Title 18, United States Code, Section 371, and Title 18, United States Code, Section 2314, the defendants,

> CEDRIC LODGE,
> KATRINA MACLEAN,
> JOSHUA TAYLOR, and
> DENISE LODGE,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third

    party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

  All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

            A TRUE BILL

GERARD M. KARAM  
United States Attorney

_____  
FOREPERSON

_____  
SEAN A. CAMONI  
Assistant United States Attorney

6-13-23  
Date

15