# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | 4:23-CR-00159 |
| -vs- | : | |
| | : | (Chief Judge Brann) |
| CEDRIC LODGE, KATRINA MACLEAN, | : | |
| and JOSHUA TAYLOR, | : | |
| | : | |
| Defendants. | : | |

## CONSOLIDATED BRIEF IN RESPONSE TO
## DEFENDANTS' MOTIONS TO DISMISS

The indictment in this case alleges that Cedric Lodge stole parts of cadavers donated to Harvard Medical School and sold them to, among others, Katrina MacLean and Joshua Taylor. MacLean and Taylor, in turn, sold those stolen remains to others. These defendants now move this Court to dismiss the indictment, arguing that the items they stole, bought, owned, and collected are not "goods" and were not valuable enough to meet the statute's threshold. Because the defendants' own activities demonstrate that the items at issue in this case are "goods" under Section 2143, and because Section 2311 defines "value" to include the aggregate value of all goods referred to in a single indictment, the motion to dismiss must fail.

## I.    Argument

Defendants Cedric Lodge and Katrina MacLean have asked this Court to dismiss the charges against them, arguing that the federal prohibition against the interstate transportation of stolen goods does not apply to stolen human remains. (Docs. 111 (MacLean Mot.), 112 (MacLean Br.), 114 (Lodge Mot.), and 115 (Lodge Br.).  Defendants further argue that Section 2314 does not permit aggregation of stolen items to meet the statutory threshold of $5,000 in value and urges dismissal on that basis as well.  And MacLean further requests disclosure of grand jury minutes.  Defendant Joshua Taylor joins in MacLean's motion.  Doc. 113.

As this Court has recognized, "to survive a motion to dismiss under Rule 12(b)(3)(B)(v), an indictment must simply set forth facts that, if true, could permit a jury to find that the defendant committed the charged offense. . . .  Dismissal is appropriate where 'the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *United States v. Perkins*, 2023 U.S. Dist. LEXIS 200145, *5-6 (MDPA Nov. 7, 2023) (citing *U.S. v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012), *U.S.*

*v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011).

## A. The stolen human remains transported by the defendants do constitute "goods" under 18 U.S.C. § 2314.

The defendants first argue that human remains cannot constitute "goods" as contemplated by 18 U.S.C. § 2314, and therefore their conduct in transporting stolen human remains between Massachusetts, Pennsylvania, and elsewhere cannot violate the statute. MacLean argues that the indictment is an overreaching attempt to criminalize the defendant's perfectly legal conduct. MacLean Br. at 1-2. Both defendants challenge the very notion that any property rights whatsoever exist with respect to human remains. MacLean Br. at 4-8; Lodge Br. at 2-5.

Accordingly, the defendants' argument can be summed up thus: it is perfectly legal to buy, sell, and own human remains, but those remains cannot be stolen goods because they cannot be legally bought, sold, or owned. Clearly, this is an absurd argument.

MacLean, for example, avers that "she is part of a legal, nationwide oddities community that collects body parts." MacLean Br. at 1. She confirms that the "oddities market is extensive and not uncommon." *Id.* Both defendants quote numerous cases that stand for

the proposition that human remains cannot be bought or sold or owned (*see* MacLean Br. at 7-8; Lodge Br. at 4-5), yet MacLean at least concedes that she regularly engages in the buying and selling and ownership of such remains, and that such trade is extensive and legal.

As relevant here, Title 18, U.S.C. § 2314 is violated whenever someone "transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud[.]"

In the context of Section 2314, the Court of Appeals for the Third Circuit has previously held that:

> The terms 'goods, wares, merchandise' is a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce. Black's Law Dictionary, 4th ed. 823 (1951); 1 Bouv. Law Dict. Rawle's Third Revision p. 1365 (1914). There was evidence that maps of the type here involved are frequently sold; there was also expert testimony . . . which placed the value on some of the individual maps alone at well over $ 5,000. Since the maps were shown without doubt to be subjects of commerce, albeit of a specialized nature, they are goods or wares or merchandise within the terms of the Act.

*United States v. Seagraves*, 265 F.2d 876, 880 (3d Cir. 1959), citing

*Western Union Telegraph Co. v. Lenroot*, 323 U.S. 490, 502 (1945).

Thus, in the Third Circuit, any items which are the "subjects of commerce," even commerce of a "specialized nature," are goods or wares under Section 2314. Here, as MacLean concedes, there is a "nationwide" and "extensive" market engaged in the buying and selling of human body parts. Such a concession recognizes that the human remains at issue in this case are the "subjects of commerce, albeit of a specialized nature."

The defendants cite to courts who have found that no property right exists in human remains. First, those cases arose from very different factual contexts than that presented in this case, and none involve the definition of goods under Section 2314. None of the defendants have identified any cases holding that Section 2314 does not apply where human remains were stolen and transported across state lines. Second, the facts of this case are clearly inapposite to the cases cited by the defendants, as those cases are premised on the assumption that human remains cannot be bought and sold, but, as alleged in the indictment and as the Court must accept as true for the purposes of deciding this motion, that's exactly what these defendants did.

MacLean's own brief highlights the contradictory nature of the

defendants' argument.  She cites to cases that state, for example:

> "There is no right of property in such remains, from their
> very nature. No authority for such claim can be shown in
> any civilized community from the time of Adam."
>
> "Clearly, there can be no property right in a dead body in a
> commercial sense, since a dead body cannot be bartered or
> sold."
>
> "[A] decedent's body is not property that can owned."

MacLean Br. at 7-8.

But MacLean then immediately cites to a 2017 Reuters article

that proclaims "in almost every state it's legal to sell the human

remains of adults[.]"  MacLean Br. at 8.  Nowhere in either brief do the

defendants address the obvious contradiction between the legal

argument that human remains cannot be owned and the fact that all of

these defendants regularly bought, sold, and owned human remains

and contend that such commercial activity was legal.

This Court is not bound by any of the cases cited by the

defendants for the proposition that human remains cannot be property.

While it is true that federal courts look to state law to determine

questions of property law, state cases are still not binding precedent on

federal courts, and defendants have identified no cases binding on this Court compelling that conclusion.  Further, some state case law has found that, under certain circumstances and for certain purposes, property rights do exist regarding human remains.  Here, the indictment alleges that the body parts were stolen from Massachusetts and transported to Pennsylvania, and both of those states recognize at least a "quasi property right" in human remains.

Massachusetts law has long recognized a quasi-right of property in the mortal remains of the dead, born of a recognized right of the next of kin to control final disposition of those remains.  *See*, *e.g.*, *Burney v. Children's Hospital in Boston*, 169 Mass. 57, 60 (MA 1897) ("it may therefore be considered as a sort of quasi property, and it would be discreditable to any system of law not to provide a remedy in such a case").

"The Pennsylvania Supreme Court in [*Pettigrew v. Pettigrew*, 207 Pa. 313 (1904)] found a property right in a corpse 'subject to a trust and limited in its rights to such exercise as shall be in conformity with the duty out of which the rights arise.'  Given this ruling, there can be no doubt that the next of kin have a property right in the remains of their

son." *Geiges v. Rosko*, 49 Pa. D. & C.3d 61, 66 (Bucks Cty Ct of Common Pleas 1987). The *Geiges* court recognized that "Although early common law recognized no property rights in the body of the deceased person, most jurisdictions have modified this rule." *Id.* (citing *Burney* and other cases).

Because that quasi property right vests with the holder "rights to such exercise as shall be in conformity with the duty out of which the rights arise," (*Geiges)* then clearly a medical school, duly designated as the custodian of remains by the decedent themselves, has property rights in conformity with the duties arising from the terms of the agreement under which such donation was made. Harvard had a duty to safeguard all donated remains and had committed to proper disposition and/or return of the remains to a designated next of kin. In order to carry out that duty, the school must have had that quasi property right to possess and keep custody of those remains until such time as delivery was made. Thus, any interference with the performance of that duty by taking the remains away without permission and selling them was a theft and a violation of that quasi property right.

Further, the Pennsylvania Supreme Court has affirmed multiple convictions in a case involving facts very similar to the one at bar. The cases involved "brothers who were licensed funeral home directors in Philadelphia. They operated several funeral homes and co-owned a crematorium with James McCafferty. In early 2004, appellees and McCafferty were approached by Michael Mastromarino, owner of Biomedical Tissue Services, a business that sold human tissue harvested from cadavers to tissue banks for resale and medical use." *Commonwealth v. Garzone*, 613 Pa. 481, 483 (Pa. 2012). The funeral home defendants would harvest parts—without permission—from dead individuals they were hired to properly dispose of and sell the parts to a middleman, who would resell the parts to others. The Pennsylvania Supreme Court affirmed all challenged aspects of the sentences that the Garzone brothers received after being convicted of 244 counts of theft for stealing and selling the human remains. *See Id.* at 484 (8 to 20 years for the Garzone brothers). And the Superior Court affirmed Mastromarino's sentence of 25 to 58 years in prison for the same 244 counts of theft. *Commonwealth v. Mastromarino*, 2010 PA Super 128, *12 (PA Superior Ct. 2010).

Thus, contrary to the defendant's contentions, there does exist at least some property right related to human remains under Pennsylvania and Massachusetts law, and there is precedent in Pennsylvania for prosecution for theft for stealing parts of human bodies.

Additionally, the Court of Appeals for the Third Circuit has found that human remains constitute goods in another statutory context:

> Human remains can have significant commercial value, although they are not typically bought and sold like other goods. Medical schools and hospitals commonly use human cadavers for training and experiments. Human tissue and organs which are taken from the recently deceased have inestimable value in transplant operations. Although remains which are used for these medical and scientific purposes are usually donated, rather than bought and sold, this does not negate their potential commercial value. Onyeanusi argues that many states prohibit commerce in human remains or organs. Notwithstanding the legality of selling some parts of the human body, most notably blood and sperm, we believe these state laws against organ and tissue sales are premised on moral and ethical, rather than economic, considerations. In fact, the very existence of these state laws indicates that there would be a market for human remains in the absence of government intervention.

*Onyeanusi v. PAN AM*, 952 F.2d 788, 792 (3d Cir. 1992) (recognizing commercial value of human remains and finding that human body parts are "goods" under the Warsaw Convention).

By recognizing that human remains have "significant commercial value," the Court, by necessity, accepted that human remains are "subjects of commerce." (*See Seagraves, supra*). In *Seagraves* as in this motion, the defendant challenged whether he could be convicted for conspiracy under Title 18 U.S.C. § 317 to violate Section 2314, arguing that that certain stolen maps were not "goods, wares, merchandise, securities or money," such that Sec. 2314 applied. The 3d Circuit rejected that argument because, it found, "the maps were shown without doubt to be subjects of commerce," and therefore goods under Section 2314. *Seagraves*, 265 F.2d at 880. The same definition would apply here, with the same result.

The government has identified only one federal case where a court considered Section 2314 in relation to human remains, though it was in the context of a motion to suppress evidence seized under a search warrant. In *United States v. Rathburn*, 2016 U.S. Dist. LEXIS 140562, *5-6 (ED MI Oct. 11, 2016), the court denied a motion to

suppress where the warrant alleged violations of, inter alia, 18 USC 2314 related to stolen human remains. The court agreed that the affidavit established "probable cause that evidence, fruits, and instrumentalities of violations of conspiracy to commit wire fraud, interstate transportation of stolen property, and deception of the United States Government through false statements (Title 18, United States Code, sections 371, 1343, 2314, 1001) will be found at 8640 Grinnell Street. . . ." *Id.* In reaching that holding, the court "recognize[d] that there is a legitimate market involving body donors, and commercial entities supplying cadavers and body parts to inter alia, Researchers and Universities." *Id.* The court further considered the affidavit's specific criminal activity, including "a vast gray and black market in dead human bodies and body parts [that] necessarily has many moving parts and players. This market is run by an organized group of international entrepreneurs buying, selling, and transporting human body parts throughout the United States and around the world." Those facts are very close to the facts alleged here, and this Court should consider this case as persuasive authority.[1]

---

[1] The defendants were later indicted and convicted on fraud and other

As the *Rathburn* court recognized, it is indisputable that a
commercial market exists in America today where human remains are
bought and sold every day.  And this Court has already recognized that
fact in a case related to this one:

> Mr. Lampi is a collector of what he calls, quote, Oddities, end
> quote, including human remains. Possession of and trade in
> human remains is, in general, legal. Indeed, it can be big
> business. Remains are frequently sold or donated for
> scientific, medical, or educational purposes. . . . But today,
> few states ban the import or export of non-Native American
> human remains outside of mortuary-specific regulations.
> (Certain Native remains are protected by the Native
> American Graves Repatriation and Protection Act) and the
> Federal Government imposes no prohibitions on such trade.
> So, although morbid, Mr. Lampi's interests are not
> necessarily, according to the law, problematic. What is
> problematic is the remains' provenance. The human remains
> that Mr. Lampi received were stolen.

*U.S. v. Lampi*, No. 4:23-0162, Jan. 2, 2025 Tr. at 30:13-31:9.

MacLean, Lodge, and Taylor cannot claim both that their
commercial trade in human remains is perfectly legal and part of a
widespread, national, extensive marketplace, and also that human

---

charges, not including interstate transportation of stolen remains. *See*
US v. *Rathburn*, 771 Fed. App'x. 614 (6th Cir. 2019) (convictions
affirmed).

remains are not goods because they cannot be bought or sold or owned. Even if it was once the case that common law held that human remains were not property subject to ownership or trade, clearly, activities like the ones alleged in this case, and conceded by MacLean, have changed things.  The defendants have treated stolen human remains as the "subjects of commerce," to their financial benefit.  They cannot now claim that the law cannot hold them accountable for that by treating the same remains they stole and sold as "goods" in the very way they did.

The indictment alleges that Cedric Lodge stole parts of bodies donated to a medical school and sold them to MacLean, Taylor, and others, shipping and transporting them over state lines in the process. That conduct fits squarely under the ambit of 18 U.S.C. § 2314.  "It would be discreditable to any system of law not to provide a remedy in such a case."  Burney, 169 Mass. at 60.

## B. Section 2314 permits aggregation to meet the $5,000 value threshold.

The defendants next argue that the government cannot satisfy the threshold of $5,000 set by Section 2314.  The defendants argue that the

human remains stolen and sold for thousands of dollars in this case actually have no pecuniary value, and that the government relied on an aggregated value for the stolen remains, which is forbidden by the statute.  The defendants misunderstand the law.

First, the human remains in this case absolutely have pecuniary value.  MacLean's claim that the government conceded that they do not misunderstands the record.  *See* MacLean Br. at 10.  The objection in *U.S. v. Pauley* was solely related to the Sentencing Guidelines and their definition of "loss" as a way to calculate the base offense level.  That argument had nothing to do with the value of the transactions involved in the interstate transportation of stolen human remains.  And the government argued consistently that the stolen remains did have pecuniary value, even to the victim medical school who had no plans to sell them.  In any event, the indictment properly alleges that the total value of the human remains transported in interstate commerce for each defendant was in excess of $5,000.  The defendants cannot, at this stage, argue about the sufficiency of the evidence.  Assuming all facts alleged in the indictment as true, the indictment properly states violations of Section 2314, and a conspiracy to commit the same.

Second, the defendants' claims that aggregation of values "is forbidden," (MacLean Br. at 11), and that "The Government cannot simply aggregate the value of multiple human remains to satisfy this requirement," (Lodge Br. at 7), are incorrect.

The term "value," as used in Section 2314, is defined in Section 2311: "'Value' means the face, par, or market value, whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof."  The statute itself defines the threshold as the "aggregate value of all goods . . . referred to in a single indictment." Nowhere in either brief do the defendants acknowledge the statutory definition of value in Section 2311, nor do they distinguish the section or explain why it should not apply.  They simply ignore its existence.

The Supreme Court examined this issue in *Schaffer v. United States*, 362 U.S. 511, 517-18 (1960).  In that case, the government had charged the defendant with multiple counts alleging violations of Section 2314. Each count encompassed a series of related transactions with an aggregate value of at least $5,000.  The trial court had permitted the aggregation to be accomplished in this way, and the

defendants appealed.  The Supreme Court held that the aggregation of

value in this manner was permissible under Section 2314:

> A sensible reading of the statute properly attributes to
> Congress the view that where the shipments have enough
> relationship so that they may properly be charged as a single
> offense, their value may be aggregated. The Act defines
> "value" in terms of that aggregate. The legislative history
> makes clear that the value may be computed on a "series of
> transactions." It seems plain that the Stracuzzas and each of
> the petitioners were engaged in a series of transactions, and
> therefore there is no error on that phase of the case.

*Id.*

Again, the defendants' briefs are devoid of any mention of this

controlling Supreme Court precedent.

Other circuits have held that each transportation of stolen goods

is a separate chargeable offense if it meets the jurisdictional amount,

and if not, the values can be aggregated and charged together. *See*, *e.g.*,

*United States v. Lagerquist*, 724 F.2d 693, 694-95 (8th Cir. 1984) (five

shipments of stolen property did not give rise to five counts because

none of the counts satisfied the jurisdictional amount); *appeal after

remand*, 758 F.2d 1279, 1281-82 (8th Cir. 1985) (the five shipments

properly could be aggregated in one count to meet the jurisdictional

amount). Both defendants cite to the first *Lagerquist* decision; neither acknowledges the second. MacLean Br. at 11, Lodge Br. at 7.

Where individual instances of interstate transportation do not meet the threshold on their own, the government may group transactions into discreet counts, each of which satisfies the threshold, or may charge a single count covering all related transactions. Both approaches have been upheld. *See, e.g., United States v. Carter*, 804 F.2d 508, 511 (9th Cir. 1986). ("The government divided 124 shipments into five counts which each include a series of related transactions and which each meet the jurisdictional amount. While all the shipments are part of one overall scheme, the government is not limited to charging only one count of violating § 2314.")

The Third Circuit Court of Appeals held in *US v Markus*, 721 F2d 442 (3d Cir. 1983), that an indictment charging twenty transportations in twenty separate counts was fatally defective because the government had failed to allege that each transaction was part of a series of related transactions. Instead, each of the twenty transactions was charged in isolation, relying on its own separate factual basis. But, after remand, the government re-indicted with a single count that aggregated all

transportations together.  *See United States v. Markus*, 604 F. Supp. 736, 738 (DNJ 1985) (defendant indicted on one count of transporting twenty-seven stolen checks, totaling approximately $27,000).  With that correction to the indictment, the trial court denied a motion to dismiss the indictment, and the Court of Appeals affirmed the denial without opinion.  *Appeal of Markus*, 1986 U.S. App. LEXIS 24356, *1, No. 85-5443 (3d Cir. Feb. 18, 1986) ("Affirmed.").  Again, both defendants cite to the *Markus* case dismissing the flawed indictment, but neither mentions the affirmance of the corrected indictment.  MacLean Br. at 10, Lodge Br. at 7.

The indictment in this case was modeled after the corrected *Markus* approach.  While the government could have taken all transactions in which the defendants transported stolen human remains in interstate commerce and grouped them in multiple counts, each with a value of at least $5,000, the government instead charged a single count aggregating the value of all related transactions, as the Court of Appeals approved in *Markus*.  Thus the indictment here complies with Third Circuit precedent, Supreme Court precedent, and the operable statutory definition in Section 2311.

### C. MacLean fails to satisfy her burden for production of grand jury minutes.

Finally, MacLean argues that the indictment "seriously misrepresents the facts and the law, or otherwise omitted other crucial facts, as to what constitutes property and the monetary jurisdictional prerequisites." Other than an apparent presupposition that her first two arguments are correct, MacLean identifies no alleged misstatements or omissions to the grand jury. The court cannot exercise its discretion to order production of transcripts of misstatements and omissions until the defendant makes a *prima facie* showing that such material exists. *United States v. Sanchez-Gonzalez*, 294 F.3d 563, 568 (3d Cir. 2002); *see also United States v. Gonzalez*, 2019 U.S. Dist. LEXIS 100172, *11 (MDPA 2019) ("defendant must make a particularized prima fade showing that such material exists").

MacLean relies on *United States v. Serubo*, 604 F.2d 807 (3d Cir. 1979), to support her request for an order compelling production of grand jury minutes. But *Serubo* was a case where the Court found that the prosecutor's conduct before the grand jury rose to misconduct, which the court called "extreme." *Id.* at 818; *see, also, e.g., United States v. Gagliardi*, 285 Fed. Appx. 11, 17 (3d Cir. 2008). No misconduct is even

alleged here; MacLean's entire argument for production of the grand jury transcripts is that the government was wrong as to what constitutes a violation of Section 2314. That has nothing to do with misconduct before the grand jury, and *Serubo* has nothing to do with this case.

If this Court agrees that human remains cannot constitute goods under Section 2314, or that the aggregation of value is not permitted, the remedy is dismissal. If that is the case, the grand jury transcripts become moot. If the Court rejects the defendants' arguments, then none of MacLean's reasons for demanding the transcripts would survive. In either event, no particularized need for disclosure exists.

Under the Jencks Act, 18 U.S.C. § 3500, no statement made by any witness other than the defendant herself, can normally be the subject of subpoena, discovery, or inspection until that witness has testified on direct examination. The Act expressly includes grand jury testimony. "The purpose of Jencks disclosure is to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012); citing *United*

*States v. Rosa*, 891 F.2d 1074, 1076-77 (3d Cir. 1989). "Importantly, in light of this purpose, the government has no obligation to produce Jencks material until the witness has testified." *Id.* No witness has testified here, and MacLean has not even asked for discovery of a specific witness's testimony.

While the defendant is not *entitled* to disclosure before testimony, the court may authorize disclosure of grand jury testimony if the defendant shows that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii). "To obtain the testimony, a party must show 'a particularized need for that information which outweighs the public interest in secrecy.'" *United States v. Minerd*, 299 Fed. Appx. 110, 111 (3d Cir. 2008). A "vague allegation, however, does not demonstrate a particularized need for disclosure." *Id.*

Here, MacLean makes nothing more than a vague allegation that the indictment reflects misrepresentations and omissions to the grand jury. MacLean has not demonstrated any particularized need for disclosure, and thus, her request should be denied.

## Conclusion

Because the indictment properly states violations of 18 U.S.C.

§ 2314, the defendants' motions should be denied.

Respectfully submitted,

JOHN C. GURGANUS
Acting United States Attorney

/s/ Sean A. Camoni
SEAN A. CAMONI
Assistant United States Attorney
Office of the U.S. Attorney
Suite 311, 235 North Washington Ave.
Scranton, PA 18501
570-348-2800/FAX 570-348-2037
Sean.a.camoni@usdoj.gov

Date: March 17, 2025

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
                                    :     4:23-CR-00159
         -vs-                      :
                                    :     (Chief Judge Brann)
CEDRIC LODGE, KATRINA MACLEAN,   :
and JOSHUA TAYLOR,                :
                                    :
              Defendants.      :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on March 17, 2025, she served a copy of the attached:

## CONSOLIDATED BRIEF IN RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

via electronic filing upon:
Edward J. Rymsza, Esquire
Christopher R. Opiel, Esquire
Patrick A. Casey, Esquire

                                /s/ Terri L. Pendolphi
                                Terri L. Pendolphi
                                Legal Administrative Specialist